with one. He is the appellant. We have some of the same argument that Mr. Washington had, who used to be my boss. The primary argument that we have this morning is that relating to the Federal Vacancies Reform Act and how the fact that the then Assistant Attorney General of the United States, who was Assistant Attorney General for the Civil Rights Division, was without authority to act. And that, in turn, impacted the validity of the Bill of Information that was filed, the guilty plea that was entered, and we also contend that it is jurisdictional. Now, as we proceed, I would point out that all of the brief writing that occurred in this case is all signed by attorneys from the Civil Rights Division and that here today is only an attorney from the Civil Rights Division. There is no one from the U.S. Attorney's Office for the Western District of Louisiana. This has been, and was, a civil rights prosecution from Maine justice. Now, we contend that the recent Supreme Court decision in the National Labor Relations Board and the case that got it there, the Department of Labor, the Supreme Court decision, was not in the D.C. Circuit's opinion and below. Both detailed explorations of the Federal Vacancy Reform Act set out the impact that this act has had. In other words, it is the sole mechanism by which the President can name an acting officer. And if you have not, if you weren't a first assistant, so to speak, then you had 210 days to take some, to be nominated, or at the end of it, you were, your acts were no longer valid. And this occurred with Vanita Gupta. She was initially the acting A.A.G. for the Civil Rights Division. Thereafter, she assumed the title of Principal Deputy A.A.G. But the United States Attorney for the District authorized the information, too. Say again, please. Didn't the U.S. Attorney for the District authorize the information? It was signed by both the Civil Rights Division as well as the Assistant U.S. Attorney for, under the authority of the U.S. Attorney. But if you go back, if you go back and look at the statutes, it's clear that the Attorney General was vested with all the authority of the Department of Justice. And through the regulation, 28 CFR 0.50, delegated all of that enforcement, with the exception of some particular areas with the Criminal Division A.A.G., in the hands and in the control of the Assistant Attorney General for the Civil Rights Division. Typically, unless there has been some other delegation that we haven't seen any evidence of, it hasn't been cited by the appellees, it hasn't been attached to any of their briefs, there is nothing to say that that authority that was contained in the regulation has in any way been moved or sub-delegated by the Attorney General, who in the authority deficit that the A.A.G. had, only the Attorney General could have done. So the fact of the signature under the authority of the U.S. Attorney for the Western District of Louisiana is akin to the U.S. Attorney ratifying or adopting what occurred from under the authority of Gupta, which is part of what the Federal Vacancy Reform Act was attempting to forestall from happening yet again, because they said it could not be ratified. Well, typically when you talk about ratification, you're talking about a subsequent office holder who is properly named coming in and saying, we agree with that, we're going to go ahead and let it stand. But what it's saying now is someone that is subservient or below or under the control of the A.A.G. for the Civil Rights Division can adopt it, can ratify it. And I would contend, Your Honor, that that is not possible. We would also contend... You agree that authorizing prosecution is a delegable duty. I would agree that it is. It is clearly that it was delegable. The Attorney General delegated it to the Assistant Attorney General for the Civil Rights Division. There is no indication that it was delegated any further than that for this case. The manual for the U.S. Attorney's manual is not a CFR. It is not the means by which one delegates some other authority. Right, but the U.S. Attorney has independent authority to authorize a prosecution, even if Gupta could not have done so. I don't believe so, Your Honor. If that regulation stands that this, all of the authority for the Civil Rights Division or the enforcement of civil rights laws, is vested in the Assistant Attorney General for the Civil Rights Division, and with some minor exceptions to the Assistant Attorney General for the Criminal Division, then there is no one else that could do it other than the Attorney General. Okay. Assuming, Arguendo, that there was merit to that, why isn't your argument waived? I would argue, Your Honor, that it is jurisdictional. You know, we're really careful about jurisdictional these days in our post-ARBA world. We don't find things jurisdictional that are not jurisdictional. Well, that may be, but I would submit to the Court that, as I've argued in my brief, that if any yahoo off the street that wasn't a qualified representative and empowered to be a representative of the Department of Justice and filed a bill of information or got like-minded people to return an indictment, it would not be, sum a matter, instituted by the Department of Justice, competent parties of the Department of Justice, to initiate a prosecution. The Assistant U.S. Attorney for that district is not a yahoo off the street. Is she, Ms. Finley? She is not. And, but, Your Honor, if we say that she, that it could not have been, it was not delegated under the CFR, and if the CFR exclusively provides that jurisdiction to the Assistant Attorney General for the Civil Rights Division, then only the Attorney General could then have delegated it to someone else. And there's no indication, no evidence that that was done in this case. That is the reason why I'm saying that, at that point, the district attorney could not have authorized a prosecution since it was exclusively in the hands and the control of the Assistant Attorney General for the Civil Rights Division. Okay. And what's your authority for the fact that you didn't waive it, that your client didn't waive it with the plea? Well, I would ask that the, and what I cited was the Fifth Circuit's en banc ruling in United States v. Cox in 1965. And in there, it goes back and declares in reaching the conclusion that the district court could not sanction the U.S. attorney for refusing to sign, prepare or sign an indictment returned by the grand jury over the objection of the U.S. attorney and the objection of the attorney general. And in finding that, coming to that conclusion, they said that the signature of the district attorney or assistant district attorney to the document was not merely a ministerial act, but it was necessary for there to be a valid indictment. And in the concurring opinion of Judge Wisdom, he cites a Supreme Court decision from, excuse me, 1868, the confiscation cases which are found at 74 U.S. 454. And in that particular case, there were, it was initiated by an assistant, excuse me, the district attorney for the Eastern District of Louisiana and named as parties some informers. Now, this was under a statute that would allow the condemnation, criminal condemnation of vessels that had been used during, for the Confederacy during the Civil War. And they wanted to forfeit them, and the informers were supposed to get some of the proceeds from it. And the attorney general, subsequently to it being filed, said we're not going to proceed with this, we wanted to have it dismissed. And the informers who were seeking to collect some of the funds from this criminal condemnation objected. And the Supreme Court, in reaching that conclusion, said, we recognize that only actions brought by a competent prosecutor can be, criminal actions can be initiated in the name of the United States. And we therefore, I would argue that it is only where a party is authorized, either by statute, by Constitution, or if it be by the regulations, to act in a certain matter, that that will stand and thus the court is conferred with jurisdiction other than to dismiss the charge. Counsel, is there anything else you want us to be thinking about on your case besides the vacancy reform act? Yes, sir. And I'm, because I'm limited on time, I'm going to boil it down to bare bones. And that is, and I set it out in the sentencing memorandum that I had filed as a record. I argued that the guidelines were not properly promulgated for a civil rights violation when it does not have some provision for someone who commits a failure to intervene, as opposed to being the actor that commits the offense. And the reason why is because Mr. Broussard entered a guilty plea to a felony failure to intervene. He was attributed, with the same guideline calculations, as the person that actually used the baton to strike this inmate. And where Mr. Broussard is there passively, he is not participating in the act. He did not intervene. And there is no reduction under the guidelines in the computations to reflect that. Okay. Are you saying that that's just, the guidelines are unfair? Or are you saying that it's error? And why is that, why is that error? Well, the court could have, under the fact that we now, the guidelines are not binding, they could have done something else. It could have done something else. But the fact that it didn't may be unfair in some grand scheme of things, and I'm not, for the purpose of your argument, but does it make it not according to the law? You've been on both sides of this. You understand that sometimes things may don't seem fair, but we follow the law. That is correct. But at the same time, we try to get things so that they're fair. And when you look at the case itself, the facts of this case, Mr. Broussard is sentenced at the same level as another defendant in this case that committed two separate aggravated batteries and did some other things. And he gets the same sentence as Mr. Broussard, who only failed to intervene. There's something inherently wrong with that. And if I didn't express that to the court, I would be failing my duties to my client. I understand. That's all I can tell you on that. I believe that some of the same issues, as far as the errors are concerned, that Mr. Washington talked about, are kind of reflective on my client. Your time is up, and you still have time for rebuttal. Thank you. Thank you. Good morning, Your Honors. I'm still Vikram Sarup, and I'm still here on behalf of the United States. The Federal Vacancies Reform Act does not preclude the former Principal Deputy Assistant Attorney General's authorization of the litigation in this case. Even if it did, however, Broussard waived any such argument by entering into an unconditional guilty plea. And any Vacancies Act argument, any problem, would be harmless because the U.S. Attorney for the Western District of Louisiana also authorized this litigation, and she unambiguously had the statutory power to do so under 28 U.S.C. 547. Let me make sure I understand your point from your briefing. It is that this is a delegable duty, authorizing convictions of prosecutions. Other people handle the convictions, I guess. Insofar as whether this was actually delegated or not is irrelevant. Any paperwork of actual delegation, because it's not a jurisdiction, since it's delegable, the failure to delegate it doesn't create a jurisdictional problem. Is that part of your argument? No, Your Honor. Those are two separate arguments. Our first argument is that it's waived by the guilty plea. I'm just looking at the actual effect of the waiver. I certainly understand your point on that. But just moving into what should have happened and what did happen. What should have happened and did happen was perfectly appropriate because the power to authorize litigation under 28 comes to the Assistant Attorney General's Office under 28 CFR 0.50. And that's all duties assigned by statute or regulation to a federal officer are presumed delegable to their assistants and subordinates. And so it's presumed delegated to the office's deputies. But the point is, obviously, that the Principal Deputy Assistant Attorney General of Civil Rights was not the Acting Attorney General anymore, Acting Assistant Attorney General. Correct. But still she was exercising this delegated power. So if that is in fact true, it's going to be part of your argument is that's not a jurisdictional defect because it is still a delegable duty that came to her and was then being exercised, if by anybody properly, by the U.S. Attorney in the Western District. No. So the authority to authorize prosecution rests in the Office of the Assistant Attorney General, for the Assistant Attorney General. Here there was no Assistant Attorney General. There was no Acting Assistant Attorney General. And because it's a delegable duty, it automatically goes to the next person in line in that office, which is the Principal Deputy Assistant Attorney General. And all duties are presumed delegable unless there's unmistakable statutory or regulatory language suggesting that only that officer and only that officer can perform that duty. Remind me, are you saying that this was actually signed under the title of Principal Deputy and not Acting Assistant? Yes. That's correct. It was signed under the title of Principal Deputy. And that was permitted under the Vacancies Act and the CFR. But the right of the Assistant U.S. Attorney is separate. Completely separate. So you don't even have to go through that to get to that backup argument, right? Exactly. Like 28 U.S.C. 547 simply says that a U.S. Attorney has the authority to prosecute for all federal crimes in her district. And that is the beginning and the end as far as the Vacancies Act argument goes. If I could turn to the substantive sentencing issues, unless the Court has any further questions on the Vacancies Act. The sentence here was 54 months. That was a downward departure, again, from the 63 to 78-month guideline range. And that guideline range was properly calculated. The starting point for the guidelines calculation is 2H1.1. That's the guideline that applies to Section 242 offenses. And you look to any underlying offense that the defendant committed. And here, in looking at conduct, you look at not only the defendant's conduct, but any conduct of those with whom he engaged in a joint criminal activity. Here, Broussard pleaded guilty to a felony violation of Section 242. He admits that he knew that Ben LaSalle was going to beat up S.S. before he walked in the chapel. And he admits that he walked in the chapel not only knowing that, but intending to advance that unlawful objective. And this is all in his stipulation, the factual stipulation on his guilty plea. He admits that he was one of the most senior officers in the chapel. And then he watched as LaSalle repeatedly struck the pretrial detainee, and he did nothing to intervene despite his constitutionality to do so, and despite the fact that he was Ben LaSalle's direct supervisor and had the most power of the various individuals who failed to intervene to put a stop to the assault. If he had ordered him to stop, he would have had to stop.  That's the hierarchy of the sheriff's office. Do you have any comment on the argument that it's unfair to put the person who's the perpetrator have the same sentence or less than the person who was the supervisor? Yes, Your Honor. I have two answers to that. First, I'll note that the guidelines here do treat the perpetrator and the person who actually did the beating and the person that failed to intervene with the same guideline range. But that's, of course, not the end of the inquiry of the fairness, if you're looking at it from a purely fairness perspective, because Section 3553 allows the district court to consider the actual facts of the offense conduct in deciding where to land within the guideline range or below the guideline range and so forth. So the district court could absolutely consider the differences in the factual conduct. The second part of it is that Broussard here is not a minor actor by any stretch of the imagination. Even vis-a-vis LaSalle. Broussard has a long history of wrongdoing as part of the sheriff's office. He was the supervisor of the narcotics unit, which if the ACLA trial transcript reveals, was the unit of the sheriff's office that engaged in a wide range of excessive force violations over a period of years. He was also the direct supervisor of Ben LaSalle, who did the actual beating here. He used excessive force against an arrestee using a baton, Brett Broussard did, and then named the baton after the arrestee, Walter. He watched and helped cover up other assaults, including of an arrestee named Ricky Roche. And later on the same day as the assault to which he pleaded guilty, the assault of SS, he also struck an inmate, Anthony Day. So the 54-month sentence here, which is below the guideline range and already a downward departure from the guideline range and is therefore presumptively reasonable, is well justified by Broussard's extensive wrongdoing, his supervisory role, and his actions on the day of the assault and in the very chapel where he committed these offenses. And his comparison of his sentence to those of his co-defendants is contrary to this court's law, as we laid out in our brief. You have to look at it against similar conduct nationwide, and looked at it in the proper lens. There's been no showing whatsoever that a 54-month sentence is inappropriate for this level and this amount of wrongdoing. I'll end by noting that, if there are no further questions, that none of the particular errors that we discussed with the Hatley sentence, which had to do with the intermediate step of the 1001 calculation or the Your Testimony line in the transcript, are present in this case. So the idea that Broussard can just sort of bootstrap his appeal to a different appeal which has different facts and different issues is not appropriate. So we would ask that you affirm the 54-month sentence for this supervisory officer who had a long history of wrongdoing. Broussard did not get one for the lying to the FBI. That's correct. Only Hatley got that? That's correct. But they all lied? Many officers lied, but only Hatley was charged with 18 U.S.C. 1001. And that's a discretionary call by the Justice Department? Yes, Your Honor, and it was based on a host of factors, including the prosecutor's perception as to their forthcomingness, their perception as to who was trying to thwart the investigation behind the scenes and so forth. It relies on a host of factors that are obviously not in the record because it's not something that is usually within the purview of this court or the district court, unless there's some sort of allegation of prosecutorial wrongdoing. And I note that to the extent that bears on the other case, the attorney for the other side remains in the courtroom. So we're anyway. And is hearing and nodding his head in the back room. If the court does not have any further questions, we'll rely on the arguments in our brief and ask that you affirm the judgment. Thank you. Thank you, Your Honors. Your Honor, if I may, if I would like to first go to supervision. The facts in this case were that at the time that the shakedown took place, Brett Broussard, even though he was a supervisor in the narcotics division, was called to assist in a shakedown just like he was a regular deputy, no rank at all. The supervisors that were there was the sheriff and then his deputy commander, Mr. Savoy, and then there was the wardens. And it was the wardens that escorted Mr. Ben LaSalle and this inmate down into the jail. It was at the direction of the sheriff Ackle, where is some place that's got no cameras, and that he went down there. And Mr. LaSalle was going at the direction of the sheriff, the overall commander, and he was being escorted by the person that was the supervisor for the prison. So to say that he was a supervisor of this person at the time that this crime was committed is a misstatement of the actual facts. Well, he was a supervisor, but you're saying his supervisor ordered it so he was also a subordinate. He was also a subordinate, and he was not involved in taking care of the jail or administering discipline within the jail or any of the rest of it. Okay. Your opposing counsel says that, well, your client got this sentence because this wasn't his only bad day. Well, I responded to that earlier, and that is, in this case, we had, as did everyone else who cooperated in this matter, a castigar or proffer letter that protected my client from the use of this information against him, including it at sentencing. So it seems somewhat disingenuous for the appellees to argue that all of this information that he provided pursuant to this castigar letter can now be used to pillar him. And I would object and feel that that is not the appropriate information. And the thing that I was going to talk about before that I'm now afforded an opportunity is the fact that when the judge says, I remember you testified at trial to someone who didn't testify at trial, and my client testified at trial, you wonder then, do you remember that my client testified at trial? So it's a matter at that point of how much confusion do we have about the facts and the defendants in this case. Thank you. Thank you.